In re Ronald W. HAMMOND and Diane A. Hammond, d/b/a Sooner Energy, Debtors.

PATCO, Inc., an Oklahoma corporation, and C.M.C. Investments, Inc., an Oklahoma corporation, Plaintiffs,

v.

Raymond W. HAMMOND and Diane A. Hammond, d/b/a Sooner Energy; Local Federal Savings and Loan Association of Oklahoma City, f.a.; and PQ Corporation, a Pennsylvania corporation, Defendants.

Bankruptcy No. BK–82–02317.
Adv. No. 82–0524.

United States Bankruptcy Court, W.D. Oklahoma.

July 15, 1983.

Robert I. Owen of Bratcher, Owen, Latting, Teague & Owen, Oklahoma City, Okl., for plaintiffs.

Jim K. Goodman, Ann L. Faford and Monty B. Bottom of Crowe & Dunlevy, Oklahoma City, Okl., for defendants.

ROBERT L. BERRY, Bankruptcy Judge.

STATEMENT OF THE CASE

The issue before the Court is whether a limited assignment of promissory note pro-

ceeds was intended to create a security interest in favor of Plaintiffs or constituted an outright transfer of the note to Plaintiffs. If it was intended to create a security interest, upon Plaintiffs' failure to properly perfect, and upon the filing of bankruptcy, the debtor in possession would have superior rights as a lien creditor pursuant to 11 U.S.C. § 544. The basic facts are not in dispute.

1. The PQ Corporation issued its promissory note to Defendant, Ronald Hammond ("Hammond") on October 1, 1981.

2. On October 23, 1981, D.D. Patterson, C.M. Clark, C.M.C. Investments, Inc. and Hammond signed an agreement for Hammond to purchase two oil leases from the other parties, for the total price of one million seven hundred thousand dollars ($1,700,000.00).

3. Hammond paid three hundred thousand dollars ($300,000.00) to Clark and Patterson and issued two promissory notes, one to Patco Inc. ("Patco"), and one to C.M.C. Investments, Inc. ("CMC"), to finance the one million four hundred thousand dollar ($1,400,000.00) balance on the purchase price.

4. To secure the payment of his two promissory notes, Hammond executed in October, 1981, (1) a mortgage covering the oil and gas leasehold properties, and (2) a security agreement covering tangible personal property on the leases.

5. On July 1, 1982, Hammond executed a Limited Assignment of Promissory Note Proceeds ("the Assignment") to Clark, Patterson, CMC and Patco. The Assignment was given to secure payment of the promissory notes executed by Hammond for the balance remaining on his purchase of the two oil and gas leases. The Assignment provides that the assignees would exercise and claim an interest in the PQ note and the payments thereunder only in the event of default and only upon written notice to Hammond. There was to be a five day period within which any default could be cured. Only after this five-day period expired could the plaintiffs give notice to PQ Corporation to make further payments to them.

6. A state court lawsuit was filed by Plaintiffs when Hammond did not make the October, 1982 payments under the promissory notes issued to Patco and CMC in connection with the purchase of the oil and gas leases. In that suit, Plaintiffs sought to attach the payments made to Hammond under the PQ note.

7. On November 30, 1982, this Chapter 11 proceeding was filed on behalf of Hammond and the state court action was stayed. Patco and CMC initiated this adversary proceeding. Plaintiffs now seek a determination that the PQ note and the payments due Hammond under the PQ note are not part of Hammond's estate and, therefore, should be turned over to Plaintiffs.

8. Hammond is now and always has been in possession of the PQ note.

9. No financing statement of any kind was made to record the taking of the security interest in the PQ note under the Assignment.

10. Hammond is a debtor in possession for purposes of this bankruptcy proceeding.

Defendants, pursuant to Rule 56, Federal Rules of Civil Procedure, move the Court order summary judgment in their favor on the grounds that the pleadings and exhibits on file demonstrate that there exists no genuine issue of material fact. The parties have submitted briefs and the matter was taken under advisement.

## CONCLUSIONS OF LAW

A resolution of this case requires us to examine Article 9 of the Uniform Commercial Code ("U.C.C."). In Oklahoma it is found at 12A O.S.1981 §§ 9–101 to 9–507.

In this connection, 12A O.S.1981 § 9–102(1) provides:

Except as otherwise provided in § 9–104 on excluded transactions, this Article applies:

(a) to any transaction, regardless of its form, which is intended to create a security interest in personal property or fixtures including goods, documents, instru-

ments, general intangibles, chattel paper or accounts;

Further, the "Article applies to security interests created by contract including . . . assignment . . . ." 12A O.S.1981 § 9–102(2). A "security interest" is defined at 12A O.S.1981 § 1–201(37) as "an interest in personal property or fixtures which secures payment or performance of an obligation."

■ The Court has examined the Assignment in question, the pertinent part of which provides: "This Assignment of interest *is given to secure the payment* of a series of promissory notes . . ." (emphasis supplied). Such language clearly evidences an intent to create a security interest. It is substance, not form, which is decisive in determining whether an agreement is intended to create a security interest. *In re Tulsa Port Warehouse Co., Inc.*, 4 Bkrtcy. 801 (D.C.N.D.Okl.1980).

This intent of the parties to create a security interest activates the Article 9 provisions relating to attachment and perfection of security interests. Title 12A O.S. 1981 § 9–301(1)(b) provides: "[a]n unperfected security interest is subordinate to the rights of: . . . a person who becomes a lien creditor before the security interest is perfected." "A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes . . . a trustee in bankruptcy from the date of the filing of the petition . . . ." *Id.* at (3). In this instance, § 9–301 is intertwined with the Bankruptcy Code, 11 U.S.C. §§ 544 and 1107. The pertinent part of § 544 provides:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;

Title 11 U.S.C. § 1107(a) provides:

Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

Hammond is a debtor in possession as defined at 11 U.S.C. § 1101(1), and accordingly has the rights of a bankruptcy trustee under § 1107(a). The trustee's powers, in cases governed by § 544, are those which the state law would allow to a supposed or hypothetical creditor of the debtor who, as of the commencement of the case, has completed the legal (or equitable) processes for perfection of a lien upon all the property available for the satisfaction of his claim against the debtor. *See* 4 *Collier on Bankruptcy,* para. 544.02 at 544–5 (15th ed. 1979). The upshot of all this is that should a determination be made that the security interest of the Plaintiffs' be found not to have been properly perfected at the time of filing of bankruptcy, the interest of Plaintiffs' would be subordinate to the interest of Hammond.

The next issue in our resolution is one of perfection. That is to say, what steps must be taken in order to perfect a security interest under Article 9 of the U.C.C. Requirements of perfection are consanguineous in nature. That is, determining the method of perfection is directly related to the nature of the security interest sought to be perfected. We must ask ourselves then, if whether or not the PQ note falls within the ambit of Article 9 of the U.C.C.

Title 12A O.S.1981 § 9–105(1)(i) states: " '[i]nstrument' means a negotiable instrument, defined in section 3–104, or a security defined in section 8–102, or any other writing which evidences a right to the payment of money . . . ." Under this definition, the

PQ note qualifies as an "instrument". The Assignment clearly was intended to create a security interest in the PQ note. For Plaintiffs to have a security interest superior to that of Hammond, they must have properly perfected prior to Hammond's perfection. In other words, they must have properly perfected prior to the date of the filing of this Chapter 11 proceeding.

■ Perfection of a security interest in an instrument is governed by 12A O.S.1981 § 9–304(1) which provides: "[a] security interest in money or instruments, other than instruments which constitute part of chattel paper, can be perfected *only* by the secured party's taking possession . . ." (emphasis supplied). A review of the affidavits on file in this case demonstrates that possession of the PQ note has always been in either Hammond or counsel for Hammond. Therefore, Plaintiffs' security interest has never been perfected and remains unperfected and subordinate to the interest of Hammond.

Plaintiffs, in their brief, without so admitting, agree to assume, *arguendo,* that the Assignment initially created a security interest and that Plaintiffs never perfected the same. Plaintiffs argue that Hammond should not prevail because, "prior to the initiation of bankruptcy proceedings, any such security interest was 'foreclosed' by Plaintiffs so that Plaintiffs 'owned' all previously received proceeds of the assigned note and the note itself before any hypothetical lien creditor analysis would be actuated under the Bankruptcy Code." Plaintiffs' Supplemental Brief at 2. Plaintiffs argue that even if an unperfected security interest was initially involved, it was effectively foreclosed prior to the initiation of bankruptcy. Plaintiffs base their contention on the following facts:

1. On or about the due date for the 1982 payments, Hammond informed the Plaintiffs that he had no intention of making the payment and in fact would not make the payment.

2. Thereafter, by letter dated October 19, 1982, written notification of the Assignment and demand was made to the PQ Corporation in relation to the PQ note.

3. Plaintiffs contend that while the Assignment required written notification to Hammond of the default and intent to exercise rights under the Assignment, with a five day cure provision, Hammond's unequivocal statement of refusal to pay the underlying obligation should have waived the requirement of notice. In any event, Plaintiffs argue, when Plaintiffs filed a legal proceeding in state court relative to the Assignment, any formal written notice requirement was met by such lawsuit. Whether such acts were sufficient to constitute the requisite notice is not determinative in our resolution of this case.

Under the Plaintiffs' theory, the state court enforcement procedures were activated and complete so as to foreclose Hammond's right to the underlying note before Hammond became a debtor in possession. We cannot agree.

■ There is no dispute that the state court enforcement procedures had been activated. However, Plaintiffs are in error when they assert that the procedures were complete. There is no evidence whatsoever that the state court ever issued a final judgment. It could not. The initiation of this Chapter 11 proceeding stayed the state court action. Had a situation existed wherein the state court had made a determination that Plaintiffs were entitled to foreclosure and had ordered Hammond to turn over the PQ note to the Plaintiffs and Hammond had done so, with a subsequent filing of bankruptcy, a different situation would exist. Since the filing of bankruptcy stayed the state court proceeding, the state court was not afforded the opportunity to decide the issue. The mere initiation of a state court foreclosure proceeding cannot be held to constitute foreclosure.

■ Plaintiffs next argue that they had effectively "foreclosed" any security interest they held by proceeding under 12A O.S. 1981 § 9–502, prior to the filing of bankruptcy, so as to cause the Assignment to be final and taken outside of the purview of

U.C.C. Article 9 as of the date of filing bankruptcy.

Title 12A O.S.1981 § 9–502(1) provides: When so agreed and in any event on default, the secured party is entitled to notify an account debtor or the obligor on any instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled under Section 9–306.

We do not see how proceeding under this section constitutes "foreclosure". We initially note that this section refers to the rights of a "secured party". Title 12A O.S.1981 § 9–105(m) defines "secured party" as "[a] lender, seller or other person in whose favor there is a security interest . . . ." We have already discussed the steps which were necessary to have perfected Plaintiffs' security interest in the PQ note. While Plaintiffs may have been a "secured party", they were an unperfected secured party. "[A] secured party who perfects prior to bankruptcy is likely to have the right to snatch the collateral out of the trustee's hands, but an unperfected secured party will invariably have to eat from the general creditors' trough in bankruptcy." J. White and R. Summers, Uniform Commercial Code, (2nd Ed.) (1980) p. 918. Plaintiffs however, argue that § 9–502 recognizes a means of summary judgment and instantaneous foreclosure. They further argue that since they would be authorized to initiate an action directly against the PQ Corporation, seeking payments due under the PQ note, provided that the statutory requirements of § 9–502 were complied with, the only theoretical basis for allowing such an action would be ownership of the note. Again, we disagree. It is true that generally, an entity who proceeds against the account debtor, pursuant to § 9–502, has possession, "ownership" under Plaintiffs' theory, of the underlying instrument. Nevertheless, proceeding under this section is not *a fortiori,* possession.

We have neither been cited to, nor have we found, any case law which stands for the principle that proceeding under § 9–502 constitutes "foreclosure". Certainly a reading of the Code Comment does not lead to such an inference. Section 9–502 merely provides for a secured party to notify the account debtor that the assignor is in default and to request that the account debtor now pay the assignee directly. It does not provide for "foreclosure" in the sense that proceeding under the section vests ownership requisite for perfection. The only way the plaintiffs could perfect their security interest was by possession of the PQ note. Failing to perfect pursuant to 12A O.S.1981 § 9–304(1), Plaintiffs may not now attempt possession, and subsequently, perfection, through utilization of other sections of Article 9. Each Article 9 section must be viewed and interpreted with great specificity. A loose construction of one section will not be permitted so as to abrogate the specific requirements of another.

Finally, Plaintiffs cite *Copeland v. Stewart,* 52 Cal.App.3d 217, 124 Cal.Rptr. 860 (1975), as standing for the proposition that perfection may be had absent possession. The Court in *Copeland* apparently based its decision on a theory of "constructive possession". In any event, the Court noted that "[g]enerally an assignment unaccompanied by delivery of possession of the . . . instrument assigned is ineffective as to creditors of the assignor . . . ." 124 Cal.Rptr. at 867.

## CONCLUSION

Contrary to the assertions of the plaintiffs, Plaintiffs had not "foreclosed" on the PQ note, neither by instituting the state court action nor by proceeding under 12A O.A. 1981 § 9–502(1). The only way Plaintiffs could be "owners" of the note, sufficient to defeat Hammond's lien creditor status, was to perfect their security interest pursuant to 12A O.S.1981 § 9–304(1) prior to the filing of this bankruptcy. Failing to do so, they were unperfected secured creditors, subordinate to Hammond's status as a lien creditor.

Accordingly, having determined that there exists no issue as to any material fact, Defendants' Motion for Partial Summary

Judgment will be and hereby is, GRANTED. Proceeds of the PQ note constitute property of the estate.

Judgment will be entered separately.

Pursuant to B.R. 752 this Memorandum Opinion constitutes the findings of fact and conclusions of law.